UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PETITION OF )<br>GEOFF SHEPARD )<br>2 Old Mill Lane )<br>Media, PA 19063 )<br> )<br>_____ ) | Misc. Action No. |

**MEMORANDUM IN SUPPORT OF PETITION**

COMES NOW Geoff Shepard, who submits this Memorandum in Support of his Petition requesting this Honorable Court to order the release of all non-public materials relating to the Watergate scandal that are now in, or later come into, the possession of the National Archives and Records Administration (NARA).

**FACTUAL BACKGROUND RELEVANT TO REQUESTED MATERIALS**

The following is a summary description of the factual background relevant to the materials requested be made public:

Watergate Grand Jury Materials:  Three grand juries were devoted exclusively to investigations of the Watergate scandal:  Grand Jury I was actually empaneled on June 5, 1972, shortly before the June 17th Watergate break-in arrests. It was utilized both by the United States Attorney's Office for the District of Columbia and by the Watergate Special Prosecution Force (WSPF) to investigate the break-in and related cover-up.  It was extended by Act of Congress and did not go out of existence until December 4, 1974, shortly before the conclusion of the Watergate cover-up trial.  Grand Jury II was empanelled on August 13, 1973 and utilized by the WSPF to facilitate investigations by their four non-Watergate task forces, which focused on Campaign Contributions, Plumbers, Political Espionage, and ITT.  It expired, at the conclusion of its eighteen month term, on February 12, 1975.  Grand Jury III, which was really an expansion

of Grand Jury II, was empanelled on January 7, 1974 for the same stated purposes as Grand Jury

II.  Grand Jury III is the only one before which former President Nixon appeared (on June 22-23,

1975), presumably to respond to questions on non-Watergate investigations.  It expired, at the

conclusion of its eighteen month term— on July 3rd --ten days after taking Richard Nixon's

testimony and without taking any action in light of that testimony.

Materials generated by the United States Attorney's Office for the District of Columbia,

particularly by the three United States Attorneys working on the Watergate investigation (Earl

Silbert, Seymour Glanzer and Douglas Campbell), and by the WSPF in connection with

presentations to and considerations of Watergate Grand Juries I, II, and III also are to covered by

the requested Order.

Congressional Materials:  The records of three committees are relevant to a full

understanding and appreciation of the significance of the Watergate scandal and its place in

history.

The Senate Select Committee to Investigate Campaign Practices (Ervin Committee):

This committee was established on February 7, 1973 by a vote of 77-0, with Senator Sam Ervin

(N-NC) as chairman.  The large number of abstentions may reflect Republican bitterness over

the party-line vote that preceded the Committee's creation that prevented any investigations into

presidential elections prior to 1972, which might have brought to light certain unsavory practices

used against Republicans in 1960, 1964 and 1968.  The nominal rationale for Ervin Committee

investigations was to determine the need, if any, for campaign reforms, but it quickly become the

principal vehicle by which most Americans were informed of the many shortcomings of the

Nixon Administration.  Committee hearings began on May 17, 1973, but the riveting nature of its

televised hearings did not take hold until John Dean's testimony on June 25th.  The Committee

issued its 1,250 page report on June 27, 1974, entitled *Report on Presidential Campaign Activities*.

All Ervin Committee materials are in NARA's possession, principally its Center for Legislative Archives.  There also are about fourteen containers of still classified materials kept in NARA's classified vault.  The Senate's general rule is that the minimum period for access to non-published materials is twenty years; but investigative materials, particularly those with personal privacy information, are closed for fifty years.  Some materials already have been made available for review and some other materials could become available after proper screening.  Others are said to be potentially obtainable through the Senate's Mandatory Review process.

The House Judiciary Impeachment Inquiry:   The House Judiciary Committee was formally authorized by Resolution 803, which passed 410-4 on February 6, 1974, "to investigate fully and completely whether sufficient grounds exist for the House of Representatives to exercise its constitutional power to impeach Richard M. Nixon, President of the United States of America."  Peter Rudino (D-NJ) was Committee Chairman.  Public hearings began on May 9, 1974 and the Committee's work culminated the last week of July, when it recommended House adoption of three Articles of Impeachment.

While all committee records are in NARA's possession, none have been released to the public.  The House's general rule is that the minimum period for access to non-published materials is thirty years (as opposed to the Senate's twenty), with investigative materials held for the same fifty years as provided by the Senate.  To date, the House has not instructed NARA to treat any of its materials as other than investigative in nature, so there has been no release of any materials whatsoever.

The Senate Select Committee to Study Governmental Operations with Respect to

Intelligence Activities (Church Committee):  Chaired by Frank Church (D-ID), the committee

was formed in 1975, largely as a result of disturbing revelations concerning intelligence activities

that had come to light in the course of the Watergate investigations.  It published fourteen

reports, but the one most relevant to Watergate-related abuses of power was Book II, *The*

*Growth of Domestic Intelligence: 1936 to 1976*.  Book II, and its related hearings and

documentation, detail improper domestic spying by the CIA, the FBI and military intelligence

organizations beginning with the administration of Franklin Roosevelt.

Church Committee records are kept in a secure vault located in Archives I, but

supposedly outside of NARA control.  Thus, it has been argued they are not really in NARA's

possession at all.  The only portion of Church Committee records that have been released related

to the assassination of President Kennedy and were opened pursuant to the JFK Assassination

Records Collection Act of 1992 but which are not relevant to the Watergate scandal.

Book II can be accessed electronically at:

http://webcache.googleusercontent.com/search?q=cache:t5TzcMxroVgJ:www.icdc.com/~paulwolf/cointe
lpro/churchfinalreportIIb.htm+%22Ideological+Organizations+Audit+Project%22&cd=6&hl=en&ct=cln
k&gl=us

Aside from the hearings, however, none of the backup materials have been released.  It is

clear from a reading of Book II, however,  that scholars and historians cannot begin to appreciate

the allegations lodged against the Nixon administration without access to the documentary

evidence of prior wrong-doing uncovered—but still undisclosed—by the Church Committee.

Court Records:  Judge Sirica presided over two trials, the break-in trial (January 8, 1973

through January 30, 1973) and the cover-up trial (October 1, 1974 through January 1, 1975.

Judge Gesell presided over the Plumbers trial (June 26, 1974 through July 12, 1974) and the

effort by the Ervin Committee to enforce its subpoena for White House tapes.  There were some

eighteen appeals from Watergate-related trials held before judges Sirica and Gesell, which are detailed at Exhibit A to this Memorandum.

There are over a dozen containers of Watergate-related materials that have been provided to NARA by the DC courts and are located at Archives II in College Park, Maryland. These have not been opened for review, so it is not clear if this constitutes all such materials relevant to the cited Watergate trials and appeals. If it does not, this Honorable Court is asked to direct that all such materials be assembled and provided to NARA for subsequent release for research.

## IMPORTANCE OF REQUESTED MATERIALS

All of the arguments presented by Petitioner Kutler in his action filed before this Honorable Court on September 8, 2010 (IN RE PETITION OF STANLEY KUTLER, ET AL, Misc. Action No. 10-mc-547 (RCL) apply equally to the requested materials, since only by a full and complete disclosure of materials produced by the Executive, Legislative and Judicial Branches of the US Government can scholars and historians fully understand and appreciate all aspects of the Watergate scandal.

More particularly, there remain a number of disturbing peculiarities, briefly described in Petitioner Shepard's Declaration, which could well be resolved by making all Watergate-related materials now in, or later to come into, NARA's possession available for scholars and researchers alike.

## CONCLUSION

If this Honorable Court is persuaded by arguments presented in the Kutler Petition to order the release of former President Richard Nixon's grand jury testimony, then it also should be persuaded to order the release of the Watergate-related materials described above.

Dated:  January 17, 2011

Respectfully submitted,

Geoff Shepard (DC Bar No. 113126)
2 Old Mill Lane
Media, PA 19063
610-892-8011

Petitioner

**Exhibit A**

## Watergate Related Appeals

### I.   Appeals from cases tried before Judge Sirica:

[Judge Sirica presided over the Watergate break-in trial, the Watergate cover-up trials and enforced the grand jury subpoenas for the White House tapes. There were thirteen appeals heard by the Circuit Court, all upheld Sirica actions. It appears that all were heard *sua sponte en banc*. Four were issued *per curium*, including those on the original tape subpoena and on the appeal of the cover-up convictions.]

1. Nixon v Sirica, et al, 487 F2d 700 (1973). Upheld Sirica-approved subpoena for nine WH tapes. Argued 9/11/73; decided 10/12/73, as amended 10/12/73 and 10/25/73

Judges: Bazelon, Wright, McGowan, Leventhal, Robinson, MacKinnon, Wilkey—expressly noted as sitting *en banc*.

*Per curiam* decision; separate dissents by MacKinnon and Wilkey.

2. Haldeman v Sirica, 501 F2d 714 (1974). Upheld Sirica decision to transmit grand jury "Roadmap" to House of Representatives. Argued 3/21/74; decided 3/21/74, as amended 3/27/74

Judges Bazelon, Wright, McGowan, Leventhal, Robinson and MacKinnon.

Unsigned Order; dissent by MacKinnon.

3. Mitchell v Sirica, 502 F2d 375 (1974). Denied Writ of Mandamus disqualifying Sirica from hearing Cover-up case. Issued without oral argument 6/7/74; MacKinnon dissent filed 7/9/74

Judges Bazelon, Wright, McGowan, Leventhal, Robinson and MacKinnon.

*Per curiam* denial without comment; lengthy MacKinnon dissent.

4. Ehrlichman v Sirica, [cite missing].  Denied Ehrlichman's application for stay in the Cover-up trial date until January of 1975 in light of Nixon resignation and Ford pardon.  Sirica had delayed trial from September 9th to October 1st.

Warren Burger, sitting as Circuit Justice, issued an opinion on August 28, 1974 (419 US 1310) denying appeal from the Circuit Court's decision.  His opinion states in pertinent part:  "That court [DC Circuit], sitting *en banc*, did not rule directly on the petition, but instead remanded and recommended that the District Judge consider delaying the trial three or four weeks..."  One of his stated reasons for not "second guessing" was that the Circuit Court had heard the case *en banc*.

5. Haldeman v Sirica [cite missing].  Denied Haldeman's application for stay in the Cover-up trial until a hearing was held on his claim that his indictment was flawed because the Grand Jury's term had been improperly extended.

As with the case above, there is no recorded decision at the Circuit Court level, but *cert* was denied on November 11, 1974 (419 US 997).  Here there is no indication of whether the Circuit Court had sat *en banc*.

6. In re Liddy, 506 F2d 1293 (1974).  Upheld Sirica's order of contempt when Liddy refused to testify before grand jury even after grant of immunity.  Argued 6/14/74; decided 10/10/74.

Bazelon, Wright, McGowan, Leventhal, Robinson, MacKinnon and Wilkey, expressly noted as sitting *en banc*.

Wilkey opinion.

7. US v Liddy, 509 F2d 428 (1974). Denied Liddy appeal based on Sirica misconduct during trial. Argued 6/14/74; decided 11/8/74.

Judges Bazelon, Wright, McGowan, Leventhal, Robinson, MacKinnon and Wilkey.

Leventhal opinion.

8. US v Liddy, 510 F2d 669 (1974). Denied Liddy appeal of contempt sentence being added on to existing sentence he already had begun to serve. Argued 6/14/74; Decided 12/12/74

Judges Bazelon, Wright, McGowan, Leventhal, Robinson, MacKinnon and Wilkey, expressly noted as sitting *en banc*.

Wilkey opinion; MacKinnon dissent.

9. US v McCord, 509 F2d 334 (1974). Upheld McCord conviction in break-in case. Argued 6/14/74; decided 12/12/74.

Judges Bazelon, Wright, McGowan, Leventhal, Robinson, MacKinnon and Wilkey, expressly noted as sitting *en banc*.

Bazelon opinion; MacKinnon filed separate concurrence.

10. US v Hunt, 514 F2d 270 (1974). Upheld Sirica denial of Hunt effort to withdraw guilty plea in break-in case. Argued 6/14/74; decided 2/25/75.

Bazelon, Wright, McGowan, Leventhal, Robinson, MacKinnon and Wilkey, expressly noted as sitting *en banc*.

*Per curiam* decision; MacKinnon and Wilkey filed separate concurrences.

11. US v Barker, 514 F2d 508 (1975). Upheld Sirica denial of motion by Cubans to withdraw guilty pleas in break-in case. Argued 6/14/74; decided 2/25/75.

Judges Bazelon, Wright, McGowan, Leventhal, Robinson, MacKinnon and Wilkey, expressly noted as sitting *en banc*.

Wright opinion; Bazelon concurring, Mackinnon and Wilkey dissenting

12. US v Mardian, 546 F2d 973 (1976) Reversed Mardian's conviction in cover-up case because he was not severed when his lawyer became ill during trial. Argued 1/6/76; decided 10/12/76.

Judges Bazelon, Wright, McGowan, Robinson and MacKinnon, expressly noted as sitting *en banc*.

Wright opinion.

13. US v Haldeman, et al, 559 F2d 31 (1976). Upheld Cover-up convictions for Haldeman, Ehrlichman and Mitchell. Argued 1/6/76; decided 10/12/76; rehearing denied 12/8/76.

Judges Bazelon, Wright, McGowan, Leventhal, Robinson and MacKinnon, expressly noted as sitting *en banc*.

*Per curiam* decision, blistering dissent by MacKinnon.

[Only one case was heard before the US Supreme Court]

14. <u>US v Nixon</u>, 418 US 683 (1974).  Upheld grand jury subpoenas for sixty-four White House tapes.  Direct appeal from Sirica ruling, heard on an expedited basis.  Argued 7/8/74; decided 7/24/74.

Justices Burger, Brennan, Douglas, Stewart, White, Marshall, Blackmun and Powell.  Rehnquist recusal.

Burger opinion.

**II.    Appeals from cases tried before Judge Gesell**

[Judge Gesell presided over the Plumbers trial, the Chapin trial, and the effort by the Ervin Committee to enforce its subpoena for White House tapes.  There were four appeals, only one of which was heard *sua sponte en banc*:  Three upheld Gesell; convictions of the Cubans in the Plumbers trial were reversed.]

1. <u>Senate Select Committee v Nixon</u>, 498 F2d 725 (1974).  Upheld Gesell's dismissal of Ervin Committee subpoena for White House tapes.  Argued 4/2/74; decided 5/23/74.

Judges Bazelon, Wright, McGowan, Leventhal, Robinson, MacKinnon and Wilkey.

Bazelon opinion; MacKinnon and Wilkey issued separate concurring opinions.

2. <u>US v Chapin</u>, 515 F2d1274 (1975). Denied Chapin's appeal of conviction before Gesell. Argued 2/7/75; decided 7/14/75.

Judges Wright, Leventhal, and Davis (of US Court of Claims, sitting by designation).  According to Ginsberg's law review article; this is only one of thirteen Watergate-related cases not heard *en banc* from the outset.  There are, however, other Watergate-related cases still being researched.

Davis opinion.

3.  <u>US v Ehrlichman</u>, [cite] Upheld Ehrlichman's conviction on all counts at Plumbers trial before Judge Gesell.  Argued 5/17/75; decided 6/18/75.

Judges Leventhal, Wilkey and Merhige (US District Judge from the Eastern District of Virginia, sitting by designation).  [This case is not cited in Ginsberg article]

Wilkey opinion.

4.  <u>US v Barker</u>, 546 F2d 940 (1975).  Reversed convictions in Plumbers case because Cuban defendants were not allowed to raise defense of good faith reliance on national security.  Argued 6/18/75; decided 5/17/76.

Judges Leventhal, Wilkey and Merhige (US District Judge from the Eastern District of Virginia, sitting by designation).  [This case is not cited in Ginsberg article]

Wilkey opinion, Leventhal dissent.